# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LATISHA M. BABB,

    Petitioner,

vs.

JENNIFER LOZOWSKY, et al.,

    Respondents.

Case No. 2:05-CV-00061-PMP-(RJJ)

**ORDER**

Before the Court are the Second Amended Petition for Writ of Habeas Corpus (#52), Respondents' Answer (#70), and Petitioner's Reply (#74). The Court finds that Petitioner is entitled to relief on one ground, and the Court conditionally grants the Second Amended Petition.

**Facts and Procedural History**

The prosecution charged that Shawn Harte, Weston Sirex, and Petitioner planned to rob a taxicab driver in the area around Reno, Nevada. Harte and Sirex entered a taxicab and, acting as normal passengers, directed the driver, John Castro, to take them to an address in Cold Springs, which is north of Reno. Petitioner drove the getaway car. When the cab arrived at the address, Harte produced a pistol and shot Castro in the head. Castro died later that day.

Harte, Sirex, and Petitioner were tried together in the Second Judicial District Court of the State of Nevada; the prosecution sought the death penalty. The jury found Petitioner guilty of first-degree murder with the use of a deadly weapon and robbery with the use of a deadly weapon. Ex. 40 (#19). The jury set the penalty for murder at life imprisonment without the possibility of parole. Ex. 47 (#22). Petitioner received two consecutive terms of life imprisonment without the

1 possibility of parole, one for the murder and the other for the use of a deadly weapon. For the
2 robbery, the state court sentenced Petitioner to a minimum term of seventy-two months and a
3 maximum term of one hundred eighty months, with an equal and consecutive sentence for the use of
4 a deadly weapon. The sentence for robbery runs concurrently with the sentence for murder. Ex. 49
5 (#22). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 55 (#23).

Petitioner filed her first state post-conviction habeas corpus. Ex. 57 (#23). The state district court denied the petition, Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 68 (#24).

Petitioner then commenced this action with a proper-person petition for a writ of habeas corpus (#6). The Court appointed counsel, who filed a first amended petition (#13). The Court determined that Petitioner had not exhausted some grounds for relief, and the Court stayed the action while Petitioner returned to state court to exhaust those grounds. Order (#43).

Petitioner filed her second state post-conviction habeas corpus petition. Ex. 73 (#54). The state district court denied relief, Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 79 (#54).

Petitioner then returned to this Court with her Second Amended Petition (#52). On its own motion, the Court dismissed ground 21 because it lacked merit on its face. Order (#53). The Court dismissed grounds 1 through 10, 13(A), 13(B), 14, and 16 through 20 as procedurally defaulted; the Court also dismissed ground 22 as untimely. Order (#69).

**Standard of Review**

"A federal court may grant a state habeas Petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16.

## Discussion

The Court will consider only ground 12 in the Second Amended Petition. Ground 12 is a claim that the trial court violated the due process clause of the Fourteenth Amendment because the trial court did not instruct the jury properly on willfulness, deliberation, and premeditation, which are elements of first-degree murder. The prosecution presented the jury with three alternative theories to find Petitioner guilty of first-degree murder. First, the jury could determine that Petitioner and her co-defendants "did willfully, unlawfully, and with malice aforethought, deliberation, and premeditation, kill and murder JOHN CASTRO." Ex. 2 (#14). Second, the jury could determine that Petitioner and her co-defendants killed Castro "during the perpetration of a robbery with the use of a deadly weapon," i.e., that the death of Castro became first-degree murder by operation of the felony-murder rule. Id. Third, the jury could determine that Petitioner and Sirex "did aid, abet, and/or encourage SHAWN RUSSELL HARTE who did willfully and unlawfully, and with malice aforethought, deliberation, and premeditation, kill and murder JOHN CASTRO," Id. Instruction 23 defined premeditation and deliberation, and it stated:

> Unless felony-murder applies, the unlawful killing must be accompanied with deliberate and clear intent to take life in order to constitute Murder of the First Degree. The intent to kill must be the result of deliberate premeditation.
>
> Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing.
>
> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate, and premeditated murder.

Ex. 39 (#19).

Nevada's instructions that define willfulness, deliberation, and premeditation have been litigated often over the past two decades. The Nevada Supreme Court had approved the above instruction in Kazalyn v. State, 825 P.2d 578 (Nev. 1992). Later, the Nevada Supreme Court determined that the Kazalyn instruction blurred the distinction among the three elements of willfulness, deliberation, and premeditation. Byford v. State, 994 P.2d 700, 713-14 (Nev. 2000). The Nevada Supreme Court set forth new instructions, that defined each element individually. Id. at 714-15.[1] At the time of the Byford decision, Tyrone Garner had been pursuing his direct appeal from a conviction for first-degree murder with the use of a deadly weapon; he had already filed an opening brief that raised the same challenge to the Kazalyn instruction. After the Byford decision, Garner's reply brief argued that Byford required reversal of his conviction. Garner v. State, 6 P.3d 1013, 1024 (Nev. 2000). The Nevada Supreme Court noted that because Garner had not objected to the instruction at trial, the issue was not "preserved for consideration on appeal unless use of the instruction constituted plain or constitutional error." Id. The Nevada Supreme Court held that Byford did not hold that the giving of the Kazalyn instruction was error or violated federal constitutional rights. The Nevada Supreme Court also concluded that, independent of Byford, the giving of the Kazalyn instruction was not constitutional error. Id. at 1024-25. The Nevada Supreme Court held that Byford had no retroactive effect upon convictions that have not yet become final, because Byford was not a case of constitutional law. Id. at 1025 (quoting Griffith v. Kentucky, 479 U.S. 314, 322 (1987)). The Nevada Supreme Court also stated:

> Although Byford expressly abandons some recent decisions of this court, it also relies on longstanding statutory language and other prior decisions of this court in doing so. Basically, Byford interprets and clarifies the meaning of a preexisting statute by resolving conflicting lines in prior case law. Therefore, its reasoning is not altogether new.

6 P.3d at 1025 n.9.

The Court of Appeals for the Ninth Circuit did not accept this reasoning. Garner had held that Byford was not a decision of constitutional importance because Byford did not cite any

---

[1] The Nevada Supreme Court did not give Byford any relief on this issue because it determined that the evidence established deliberation and premeditation. 994 P.2d at 712-13.

provision of the federal constitution. 6 P.3d at 1024. The Ninth Circuit noted that the correct analysis was somewhat more complicated than that:

> It is clearly established federal law, as determined by the Supreme Court, that a defendant is deprived of due process if a jury instruction "ha[s] the effect of relieving the State of the burden of proof enunciated in Winship on the critical question of Petitioner's state of mind." Sandstrom v. Montana, 442 U.S. 510, 521 (1979); Francis v. Franklin, 471 U.S. 307, 326, (1985) (reaffirming "the rule of Sandstrom and the wellspring due process principle from which it was drawn."); see also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

Polk v. Sandoval, 503 F.3d 903, 909-10 (9th Cir 2007). The court of appeals then noted that Byford reaffirmed the notion that first-degree murder had three elements—willfulness, premeditation, and deliberation—that must be proven beyond a reasonable doubt. Id. at 910 (quoting Byford, 994 P.2d at 713-14). The Kazalyn instruction violated due process because it "defined away 'willful' and 'deliberate' by equating them with 'premeditated' . . . ." 503 F.3d at 911.

> Instead of acknowledging the violation of Polk's due process right, the Nevada Supreme Court concluded that giving the Kazalyn instruction in cases predating Byford did not constitute constitutional error. In doing so, the Nevada Supreme Court erred by conceiving of the Kazalyn instruction issue as purely a matter of state law. Rather, the question of whether there is a reasonable likelihood that the jury applied an instruction in an unconstitutional manner is a "federal constitutional question." See Francis, 471 U.S. at 316. The state court failed to analyze its own observations from Byford under the proper lens of Sandstrom, Franklin, and Winship, and thus ignored the law the Supreme Court clearly established in those decisions—that an instruction omitting an element of the crime and relieving the state of its burden of proof violates the federal Constitution. See Evanchyk v. Stewart, 340 F.3d 933, 939-40 (9th Cir. 2003). Since the Nevada Supreme Court "fail[ed] to apply the correct controlling authority," its decision was contrary to clearly established federal law, as determined by the Supreme Court. Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003) (citing Williams v. Taylor, 529 U.S. 362, 413-14 (2000)).

503 F.3d at 911.

After Polk, the Nevada Supreme Court returned to the issue in Nika v. State, 198 P.3d 839 (Nev. 2008). The Nevada Supreme Court noted that Byford was a change in state law. 198 P.3d at 849. It declared Garner's statement that Byford was a clarification in existing state law to be dicta. Id. at 849-50. It held that the Kazalyn instruction was a correct reflection of Nevada law before Byford. Id. at 850. The Nevada Supreme Court then stated:

> Despite our disagreement with the assumption underlying the decision in Polk, we acknowledge that the change effected by Byford properly applied to that case as a matter of due process. The United States Supreme Court has indicated that for purposes of due

-5-

> process, the relevant consideration "is not just whether the law changed" but also "when the law changed." <u>Thus, if the law changed to narrow the scope of a criminal statute before a defendant's conviction became final, then due process requires that the change be applied to that defendant.</u> In such cases, retroactivity is not at issue; rather, due process requires that the conviction be set aside if required by the change in the law. In this respect, our decision in <u>Garner</u> erroneously afforded <u>Byford</u> complete prospectivity because as a matter of due process, the change effected in <u>Byford</u> applies to convictions that were not yet final at the time of the change. <u>Polk</u> involved such a conviction.

<u>Id.</u> (emphasis added, footnotes omitted) (quoting <u>Bunkley v. Florida</u>, 538 U.S. 835, 841-42 (2003); <u>Fiore v. White</u>, 531 U.S. 225, 228-29 (2001)).

Petitioner and co-defendant Sirex raised on direct appeal the issue of the <u>Kazalyn</u> instruction. The Nevada Supreme Court held:

> Appellants also challenge the giving of Instruction 23, the "<u>Kazalyn</u> instruction," which was ultimately criticized in <u>Byford v. State</u>. Appellants argue that the instruction improperly merges the concepts of premeditation and deliberation and, therefore, reduces the State's burden of proof in violation of due process. Only Sirex objected to the challenged instruction; however, neither appellant is entitled to relief.
>
> As we have recently held, the giving of the <u>Kazalyn</u> instruction in cases like this one, which preceded the <u>Byford</u> decision, constitutes neither plain nor constitutional error.

Ex. 55, p. 12 (#23) (footnotes omitted).

This ruling is contrary to clearly established federal law, as determined by the Supreme Court of the United States. <u>See</u> 28 U.S.C. § 2254(d)(1). There are two possible reasons why, but factors common to each reason are that each element of the crime of first-degree murder must be proven beyond a reasonable doubt and that a jury instruction must not lift that burden of proof from the prosecution. <u>Polk</u>, 503 F.3d at 909-10 (citing <u>Francis v. Franklin</u>, 471 U.S. 307, 326, (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510, 521 (1979); <u>In re Winship</u>, 397 U.S. 358, 364 (1970)).

First, this Court could ignore <u>Nika v. State</u> and take the ruling on Petitioner's direct appeal at face value. <u>Polk</u> would then be directly binding precedent upon this Court. Instruction 23 violates due process because it allowed the jury to find Petitioner guilty of first-degree murder without finding all the required elements beyond a reasonable doubt. The Nevada Supreme Court's decision to the contrary on direct appeal would be contrary to <u>Francis</u>, <u>Sandstrom</u>, and <u>Winship</u>. <u>Polk</u>, 503 F.3d at 911.

Second, this Court could acknowledge Nika's holding that Byford changed Nevada's law. The Nevada Supreme Court decided Byford on February 28, 2000. 994 P.2d 700. Petitioner's direct appeal was pending at the time of the Byford decision. The Nevada Supreme Court decided Petitioner's direct appeal on July 10, 2001. Ex. 55 (#23). According to Nika, the Kazalyn instruction accurately reflected Nevada law before Byford, and then Byford made explicit and distinct the three elements of first-degree murder—willfulness, deliberation, and premeditation. Nika, 198 F.3d at 849. This change in state law has federal constitutional significance because, as noted above, all elements of a crime must be proven beyond a reasonable doubt, and a jury instruction cannot remove that burden. Furthermore, as Nika itself recognizes, due process requires that a conviction be set aside if a change in the law narrows the scope of the applicable criminal statute before the conviction becomes final. Bunkley v. Florida, 538 U.S. 835, 841-42 (2003); Fiore v. White, 531 U.S. 225, 228-29 (2001). The Nevada Supreme Court's decision not to set aside Petitioner's conviction because of the use of the Kazalyn instruction would be contrary to Bunkley and Fiore. 28 U.S.C. § 2254(d)(1).

In short, whether or not the Court gives Nika any effect, the Nevada Supreme Court acted contrary to clearly established federal law, as determined by the Supreme Court of the United States, when it denied Petitioner relief based upon the Kazalyn instruction.

**Harmless Error**

The Court is not convinced that this error was harmless. A constitutional error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). If the Court is in grave doubt whether the constitutional error had that effect or influence, then the Petitioner is entitled to the writ. Coleman v. Calderon, 210 F.3d 1047, 1051 (9th Cir. 2000). "Grave doubt exists when, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" Butler v. Curry, 528 F.3d 624, 648 (9th Cir. 2008) (quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995).

After Petitioner was arrested, she was interviewed by Jennifer Crowe, a newspaper reporter. Crowe testified as to selected statements that Petitioner made:

1  "I was the driver.

2  "It was maybe a 15-minute plan. We weren't out to get this specific person.

3  "I jokingly said, 'Let's rob a cab. It's easy enough.' So we did.

4  "I didn't hear the gunshot. I didn't even know he was shot until I pulled up alongside the car and heard him (the driver) breathing.

5  "The cab stopped in Cold Springs, and I pulled in front of it.

6  "I looked back and saw him in the front seat with his head rolled back.

7  "When I thought about it later, I kept hearing his breath.

8  "I thought maybe someone else would rob a cab and they'd think he did it.

9  "I was broke, and I had just lost my job. I needed money to pay my bills. I have a lot of debt. For the money we got, that man's life wasn't worth it.

10  

11  "How do you tell people you were involved in a murder? How will I tell my mom?

12  "I acknowledge this happened and I feel bad. I have nothing to hide, what's done is done. This is forever, nobody will forget. You see it on TV and you know that you did that. I didn't want any of this."

13  

14  Ex. 37, pp. 713-14 (#18). No other evidence that described Petitioner's involvement with the

15  homicide was presented to the jury. Nevada now defines deliberation as follows:

16  Deliberation is the process of determining upon a course of action to kill as a result of thought, including weighing the reasons for and against the action and considering the consequences of the action.

17  

18  A deliberate determination may be arrived at in a short period of time. But in all cases the determination must not be formed in passion, or if formed in passion, it must be carried out after there has been time for the passion to subside and deliberation to occur. A mere unconsidered and rash impulse is not deliberate, even though it includes the intent to kill.

19  

20  

21  Byford, 994 P.2d at 714. Petitioner's statements above are at best sparse evidence of deliberation.

22  Nothing indicates a determination upon a course of action to kill, even over a short period of time.

23  Furthermore, the prosecution's arguments on willful, deliberate, and premeditated murder

24  compounded the error in the instruction and focused only upon premeditation. See Ex. 38, pp. 785-

25  86 (#19).

26  Another theory of guilt was that Petitioner aided and abetted Shawn Harte in his willful,

27  deliberate, and premeditated killing of Castro. Harte wrote a letter to a former girlfriend in which

28  he described his reasons to shoot Castro and the shooting itself. A redacted version was presented

-8-

to the jury. Ex. 81 (#74). For the purposes of this decision, the Court assumes that the letter is evidence of Harte's deliberation. However, nothing in the redacted version indicates that Petitioner was part of a plan to shoot a cab driver. Instead, as noted above, the evidence of Petitioner's involvement indicates that she was part of a plan only to rob a cab driver.

The last theory of guilt presented to the jury was felony murder. For this theory, the jury received the following instructions:

> Whenever death occurs during the perpetration of certain felonies, including Robbery, NRS 200.030 defines this as Murder in the First Degree. This is known as the "felony murder rule".
>
> Therefore, an unlawful killing of a human being, whether intentional, unintentional or accidental, which is committed in the perpetration of a Robbery is Murder in the First Degree if there was in the mind of the defendants the specific intent to commit the crime of Robbery.
>
> The specific intent to commit Robbery must be proven by the state beyond a reasonable doubt.

Ex. 39, Instruction 20 (#19).

> One who aids and abets another in the commission of a robbery with the use of a deadly weapon is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and a probable consequence of the crime originally aided and abetted.
>
> In order to find Latisha Marie Babb and Weston Edward Sirex guilty of the crime of Murder, as charged in Count I of the Indictment, you must be satisfied beyond a reasonable doubt that:
>
> 1. The crimes of Murder and Robbery were committed;
>
> 2. Latisha Marie Babb and Weston Edward Sirex aided and abetted such crimes;
>
> 3. Shawn Russel Harte, a co-principal, committed the crimes of Murder and Robbery, and;
>
> 4. The crime of Murder was a natural and probable consequence of the commission of the crime of Robbery.

Ex. 39, Instruction 22 (#19). In short, felony murder is a theory of guilt that is not affected by the defective instruction on willfulness, deliberation, and premeditation. Instead, the jury would need to find that Petitioner had the specific intent to commit robbery. See Ex. 39, Instruction 20 (#19). The jury then would need to find that Harte killed Castro in the perpetration of the robbery, making Castro's death first-degree murder. Id. Petitioner could then be found guilty of first-degree murder

-9-

under the felony-murder rule because she aided and abetted Harte in the commission of the robbery. See Ex. 39, Instruction 22 (#19).

However, the jury delivered only a general verdict of first-degree murder; there was nothing on the verdict form that allowed the jury to distinguish among the three theories of murder. The jurors did not need to be unanimous in their finding as to any of the three theories of murder. Ex. 39, Instruction 42 (#19). "[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." Zant v. Stephens, 462 U.S. 862, 881 (1983). While Instruction 42 and the generality in the verdict form might help the jury to reach a verdict, it leaves the Court in grave doubt whether all the jurors agreed that felony murder was the theory by which they found Petitioner guilty of first-degree murder. See Coleman, 210 F.3d at 1051.

**Conclusion**

Instruction 23 violated the Due Process Clause of the Fourteenth Amendment because it permitted the jury to find Petitioner guilty of first-degree murder without unanimously finding all of the elements of that crime beyond a reasonable doubt. The Court will grant a conditional writ of habeas corpus based upon ground 12. The Court will not reach the remaining claims presented.

IT IS THEREFORE ORDERED that the Second Amended Petition for Writ of Habeas Corpus (#52) is **GRANTED** conditionally. Accordingly, Respondents shall release Petitioner from the custodial constraints imposed as a result of her conviction on count one of the indictment filed in the Second Judicial District Court of the State of Nevada, Washoe County, in State v. Babb, Case No. CR98-0074 within thirty (30) days of the later of the conclusion of any proceedings seeking appellate or certiorari review of the Court's judgment, if affirmed, **or** the expiration of the periods for seeking such appeal or review, unless Respondents file a written election in this matter within the thirty-day period to retry Petitioner and thereafter commences jury selection in the retrial within one hundred twenty (120) days following the election to retry Petitioner, subject to reasonable request or modification of the time periods in the judgment by either party pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure.

1  IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly in favor of Petitioner and against Respondents, conditionally granting the Second Amended Petition for Writ of Habeas Corpus (#52) as provided above.

IT IS FURTHER ORDERED that the Clerk of the Court shall forthwith provide a copy of this order and the judgment to the clerk of the Second Judicial District Court of the State of Nevada, in connection with that court's case <u>State v. Babb</u>, No. CR98-0074, to the District Attorney of Washoe County, and to the Nevada Supreme Court, in connection with that court's case <u>Babb v. State</u>, No. 49929.

DATED: July 12, 2011.

_____
PHILIP M. PRO
United States District Judge